OPINION
Appellant, Bonnie Steele, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor children to the Butler County Children Services Board (BCCSB). We affirm the decision of the trial court.
Appellant is the biological mother of Chad (DOB 12/10/92), Sarah (DOB 5/13/94), Felicia (DOB 5/4/98) and Selia (DOB 8/31/99). BCCSB first became involved with appellant in March 1995 when the agency received a referral that appellant did not have milk or diapers for the children, and that Chad was hanging out a window completely naked. Over the next few years, numerous referrals were received and investigated regarding Chad and Sarah. In September 1997, dependency complaints were filed regarding the two children. Custody was granted to the children's father in September 1998. However, he returned the children to appellant in June 1999 without contacting the agency. BCCSB received referrals regarding appellant's care of Felicia in December 1998 and July 1999.
BCCSB again became involved with the children when it received a referral on March 27, 2000 alleging that the children were left unsupervised and that Felicia, who was not quite two years old, was seen on the roof. On investigation, the police found Felicia and Selia in the apartment with an unrelated male who was passed out due to intoxication. Appellant stated that she knew the man had been drinking, but that he was not passed out when she left.
On April 30, 2000, the police were called when they received another report that the children were left unattended. On investigation, it was discovered that appellant and a friend left their eight children home together while they went to bars. The children ranged in age from 11 years to eight months old.
On May 2, 2000, BCCSB filed neglect and dependency complaints on behalf of appellant's four children. On May 5, 2000, appellant was charged with four counts of child endangering. Appellant was arrested on May 27, 2000 for theft. She was also charged with a probation violation. She was sentenced to six months on the theft charge and ordered to serve a five-year prison term for the probation violation.
On May 9, 2000, the trial court found the children were neglected and dependent. Chad and Sarah were placed with foster families. Felicia and Selia were initially placed with an aunt, but were later placed with a foster family when the aunt was unable to care for the children. BCCSB filed motions for permanent custody of all four children in September 2001. After a hearing, the trial court granted permanent custody of the children to BCCSB. Appellant[1] now appeals the trial court's permanent custody decision and raises the following single assignment of error:
 "THE TRIAL COURT'S DECISION TO GRANT BCCSB PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
We begin by recognizing that natural parents have a constitutionally protected liberty interest in the care and custody of their children.Santosky v. Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 759. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769. "Clear and convincing evidence" requires that the proof "produced in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
A reviewing court will not reverse a finding by a trial court that the evidence was clear and convincing unless there is a sufficient conflict in the evidence presented. Id. at 479. When deciding a permanent custody case, the trial court is required to make specific statutory findings; the reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See In reWilliam S. (1996), 75 Ohio St.3d 95.
A trial court may not award permanent custody of a child to a state agency unless the agency satisfies two statutory factors. First, the agency must demonstrate that an award of permanent custody is in the best interest of the child. R.C. 2151.414(B)(2). Second, the agency must show that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent. Id.
When determining whether it would be in the best interest of the child to grant permanent custody to an agency, a juvenile court should consider all relevant factors, which include, but are not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
The trial court found a grant of permanent custody to BCCSB was in the best interest of the children. The court further found that BCCSB made reasonable efforts to prevent and eliminate the need for removal of the children, that the children could not be placed with their parents within a reasonable time and that there is a substantial probability that the children will be successfully placed in an appropriate adoptive home. Appellant argues that the trial court's decision is not supported by clear and convincing evidence. We disagree.
In her brief, appellant argues that keeping children in the home is preferred over granting permanent custody to the state, and that her interaction with her children has been generally good and there is a strong bond between her and the children. She contends that the best interest of the children would be served by giving her custody when she is released from prison.
The evidence in the record establishes that appellant is not scheduled to be released from prison until December 2004, and that she may be facing further jail time on the theft and child endangering charges at that time. Appellant hopes to be released early. However, her first motion for judicial release was denied and there is no guarantee that any later motions will be granted.
At the hearing, BCCSB caseworker Holly Burns testified that placement with relatives was not a possibility and that Chad's foster family is willing to adopt all four children. Burns stated that even if appellant was released early, and followed through on a case plan to return custody, it would be a minimum of six months after release before the agency would consider returning the children to appellant. In a written report, Burns discussed the agency's past and present attempts to provide services and assistance to appellant and noted that, despite this assistance, appellant has been unable to maintain a stable environment and to refrain from criminal activity. She recommended granting permanent custody to the agency so that the children could achieve some sense of permanency in their lives.
Julie Melanson, a child and family therapist who has been seeing Chad and Sarah, testified that the lack of permanency is a major problem for the children. She discussed the stress caused by the lack of permanency and security in the children's lives. Melanson testified that waiting to see if appellant is released from prison early would be detrimental in itself and, in addition, it would severely affect the children if an early release did not happen. She discussed how Chad has used self-mutilation as a way of coping with the situation and how Sarah does not even remember what her mother looks like. Melanson discussed how the two younger children, Felicia and Selia, are at a critical attachment time and need a permanent placement as soon as possible. She stated that it was not a good idea to wait to see if appellant was released because the waiting has been going on for over 19 months and appellant still has the children thinking she is going to be released soon.
Melanson also discussed how Chad's foster family has maintained contact between all four children and wants to adopt all four if permanent custody is granted to the agency. The family has had the other children over to visit regularly in the evenings and at least one weekend, and took both Chad and Sarah on a vacation to Florida.
The guardian ad litem testified that he recommended granting permanent custody to BCCSB. He stated that appellant has shown no ability to remain consistent in her life. He stated that there is no reason to believe she will be released before 2004 and there is no reason to believe that, even if she is released, she will change her lifestyle.
We find no error in the trial court's determination that granting permanent custody is in the best interest of the children and that they cannot be placed with a parent within a reasonable time. Appellant has a history of criminal involvement and failing to properly care for the children. Although she hopes to be released early, there is no guarantee this will occur. As mentioned above, when she is released in December 2004, she faces further incarceration for the theft and child endangering convictions. Waiting and hoping that appellant will be released early and will follow through on the requirements to obtain custody of her children is not in the best interest of the children, who clearly need stability in their lives.
The evidence shows that the younger two girls have no recollection of their mother and are at a critical attachment stage. The evidence further shows that the children are thriving in their present environments. The record contains more than sufficient evidence to support the trial court's determinations. Appellant's assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.
[1] The three alleged fathers of the children did not appear to contest the motion for permanent custody and have not appealed the trial court's decision.